GERALDINE H. CARSON et al., Appellants, v. CHARLES L. LEE.

Division One, March 2, 1920.

1. **Deed as Mortgage: Right of Redemption: Limitations.** A conveyance in the form of a warranty deed, made and accepted as security for a debt, is a mortgage, and leaves in the mortgagor an equity of redemption which cannot be clogged or abridged by a stipulation in it that redemption must occur within ten years.

2. ———: **The Word Redeem: Intention.** Whether or not a deed, otherwise absolute, is to be construed to be a mortgage, is not to be determined by the use of the word "redeem" used in a stipulation clause therein by which the grantee agrees that the grantors "may at any time within ten years redeem said land" and upon the payment of a named sum of money he "will reconvey" to them, for though the word is appropriate to express an equitable right of redemption, it is not of fixed meaning, and the nature of the instrument, whether mortgage or conditional sale, is not determined by its use, but by the intention of both parties at the time it was made. If made to be a mortgage it retains the character then intended; otherwise, a deed absolute on its face, with an agreement to reconvey upon conditions, cannot be construed to be a mortgage, but is a conditional sale or deed of purchase.

3. ———: **Intention: Extraneous Evidence.** The terms of a deed may show so clearly on its face the real understanding of the parties, that no aid from extraneous circumstances is required or permitted to interpret it. On the other hand, it may leave the question whether it is a mortgage or deed of purchase in such doubt, that

extraneous evidence is necessary to determine its character, and then such evidence is competent.

4. ———: **Debt.** A condition indispensable to a holding that a warranty deed was intended to be a mortgage is that there must have been a debt to secure, or some liability against which the grantee is to be guarded; for the purpose of a mortgage is security.

5. ———: ———: **To 'Pay Debts.** Where the grantee was surety for one of the grantors on notes to the amount of a few hundred dollars, but neither was otherwise indebted to him, the notes were paid out of the $4000 named as the consideration for the deed, as was an existing mortgage for $800, and no assignment of any of the notes was made to the grantee, and there is no evidence that the balance of the consideration was advanced as a loan to either grantor, and no loan evidencing a debt was taken and no debt was mentioned in the deed, there was no debt secured by the instrument, and to hold there was would be to run counter to all ordinary experience in business transactions.

6. ———: ———: **Repayment.** The fact that the stipulation in the deed permitting the grantors to redeem and obligating the grantee to reconvey on the payment of a named sum, contained no agreement binding the grantors to pay the sum named or any part of it, is a circumstance of weight, though not conclusive, in determining whether or not the instrument was a mortgage.

7. ———: **Possession: Taxes: Surplus After Paying Debts.** The facts that the grantee was put into possession when the instrument was executed, that he was by it required to pay the taxes thereafter, and where the grantors were financially embarrassed, that the consideration was more than grantors' debts paid by him and the balance was turned over to them, without note or other evidence of a loan, all likewise point significantly to a conclusion that the instrument was not a mortgage.

8. ———: **Subsequent Indemnifying Bond.** The fact that the purchaser from the grantee in a deed which contained a stipulation that the grantors might redeem upon the payment of a named sum of money, exacted of the surviving grantor and the grantee a bond to indemnify himself against loss because of an apprehended possible right in the heirs of the deceased grantor to redeem, and that of the purchase price paid by said purchaser a part was paid to said surviving grantor, whose ten-year right to repurchase had not expired, sheds no light on said original transaction and has no tendency to prove that said original deed was a mortgage, for the character of the transaction was fixed when said deed was made.

9. **Conditional Sale: Right of Heirs to Repurchase.** Some authorities holding an option to purchase property creates no interest that is

either assignable or transmissible to heirs of the option-holder, are cited in the opinion, but the point is not ruled, because it is unnecessary to a proper adjudication of the issues.

Appeal from Mississippi Circuit Court.—*Hon. Frank Kelly*, Judge.

AFFIRMED.

*Haw & Brown* for appellants.

(1) The court, upon the objection of defendant, refused to permit plaintiffs to show that at the time the conveyance from Addie Howlett and her husband was made to Luke Howlett, Price Howlett, husband of Addie, was being hard pressed and even sued on, claims against him. Such testimony was proper. 27 Cyc. 1006 (c); Brightwell v. McAfee, 249 Mo. 579; Powell v. Crow, 204 Mo. 487; Book v. Beasley, 138 Mo. 455; Cobb v. Day, 106 Mo. 278. It does not matter that the evidence was concerning the husband's debts, as the wife may mortgage her lands to secure her husband's debts. Hack v. Hill, 106 Mo. 26. (2) The court erred in failing and refusing to hold that the conveyance from Addie Howlett and Price Howlett to Luke Howlett, was a mortgage and that plaintiffs, the heirs of Addie Howlett, had a right to redeem the land therein described. The suit was brought in time. Lipscomb v. Talbott, 243 Mo. 28; Sheppard v. Wagner, 240 Mo. 437; Wilson v. Drumrite, 21 Mo. 325; Ballinger v. Chouteau, 20 Mo. 89; 27 Cyc. 1029 (e); R. S. 1909, sec. 1881; Rutte v. Carothers, 223 Mo. 647; Gray v. Yates, 67 Mo. 601. (3) The instrument sued on is a, mortgage and should have been so construed. Where a deed absolute in form contains a clause reserving to the grantors a right to redeem the premises by the payment of a specific sum within a limited time, this will generally convert the transaction into a mortgage, being taken as manifesting the intention of the parties to create a security only. 27 Cyc. 997 (IV); Sheppard v. Wagner, 240 Mo. 437; DesLoge v. Ranger, 7 Mo. 330. (a) The intent as expressed in the instrument itself should control. 13 Cyc. 604, 604-D, 606 (b); 34 Cyc. 766; 3 Bou-

vier's Law Dictionary (3 Rev.), p. 2858; 27 Cyc. 997
(IV); 7 Words and Phrases, p. 6023. (b) Even where the
intention is doubtful, and the court is to determine wheth-
er the transaction is a mortgage or a conditional sale, it
will be held a mortgage, as that construction is the more
just and equitable.  Phillips v. Jackson, 240 Mo. c. 332,
Powell v. Crow, 204 Mo. 490; Turner v. Kerr, 44 Mo.
434; Bender v. Markle, 37 Mo. 246; Brant v. Robertson,
16 Mo. 145; White v. University Land Co., 49 Mo. App.
464.  (4) A deed absolute on its face may be a mortgage.
27 Cyc. 991, 994 (b) 996 (b); Chance v. Jennings, 159 Mo.
554; Book v. Beasley, 138 Mo. 455; Hack v. Hill, 106 Mo.
18; Sharkey v. Sharkey, 47 Mo. 543; Tibeau v. Tibeau,
22 Mo. 77; Wilson v. Drumrite, 21 Mo. 325; McDowell
v. Morath, 64 Mo. App. 297.  (5) The fact that there is
no agreement to pay interest in this case is more than
offset by the grantee taking possession and retaining the
rents and profits.  Lipscomb v. Talbott, 243 Mo. 1; Ben-
der v. Zimmerman, 122 Mo. 194; Towner v. Johnson, 95
Mo. 431; Ely v. Turpin, 75 Mo. 83.

*Russell & Joslyn* for respondent.

(1) The petition states no cause of action.  Jones
v. Hubbard, 193 Mo. 163; Branham v. Peltzer, 177 S. W.
374; Donovan v. Boeck, 217 Mo. 87.  (2) The death of
Addie Howlett before the expiration of the ten-year
period could not extend the time limit for more than
three years after her death.  R. S. 1909 sec. 1883; Smith
v. Settle, 128 Mo. App. 382; Reed v. Painter, 145 Mo.
341; Schradski v. Albright, 93 Mo. 42.  (3) There was
no existing debt alleged or proven, therefore the maxim
"no debt, no mortgage" should be applied.  Donovan v.
Boeck, 217 Mo. 87.  (4) At the time she executed the deed,
Addie Howlett was a married woman, and in law deemed
a *femme sole* so far as to enable her "to contract and be
contracted with."  R. S. 1899, sec. 4335; R. S. 1909, sec.
8304.  (5) The deed itself and all of the evidence shows
the transaction to be a complete sale, with the right re-

served in the grantors, or "either of them," to repurchase within a specified time. Turner v. Kerr, 44 Mo. 433; Slowey v. McMurray, 27 Mo. 113; Bobb v. Wolff, 148 Mo. 335.; Dunaway v. Kerr, 163 Mo. 415; Bailey v. Trust Co., 188 Mo. 486; Powell v. Crow, 204 Mo. 481. (6) The sale was a conditional one, and even if there had been no redemption by Price Howlett, Addie Howlett, had she lived, could not have redeemed after the expiration of the ten-year period. Bobb v. Wolff, 148 Mo. 349. (7) The burden was on the appellants to show by clear and convincing proof that the deed was a mortgage. Cobb v. Day, 106 Mo. 278; Book v. Beasley, 138 Mo. 455; Bobb v. Wolff, 148 Mo. 335. (8) "Redeem," as defined by the law writers, means to purchase back; to buy back; to repurchase in a literal sense. 3 Bouvier's Law Dictionary (3 Rev.) p. 2852.; 34 Cyc. 766. (9) In order to show that a deed absolute in form was intended as a mortgage, the evidence must be satisfactory as to its credibility, unequivocal as to its terms and meaning, and clear and convincing beyond a reasonable doubt. Gerhart v. Tucker, 187 Mo. 46; Brightwell v. McAfee, 249 Mo. 562.

GOODE, J.—Plaintiffs, who are the children and only heirs of Addie Howlett and Sterling Price Howlett, both deceased, filed this action to obtain a decree that they be allowed to reedeem a parcel of land, consisting of seventy acres, from the operation of an alleged mortgage made by their parents. The instrument said to be a mortgage, executed and recorded July 6, 1903, was to Luke Howlett, a brother of said Price, and was in form a warranty deed, except that it contained this paragraph:

"And said Luke Howlett agrees that said Price and Addie Howlett may at any time within ten years redeem said land and he will upon payment to him of said sum of $4,000 reconvey to them or either of them the said land without payment of any interest. Subject to the. easement of public and railroads, if any, over said land. Purchaser assumes payment of all taxes falling due after the year 1903."

When that conveyance·was made the title to the land was in Mrs. Addie Howlett, subject to a deed of trust given by Addie and S. P. Howlett, her husband, October 17, 1901, to E. J. Deal, trustee, to secure the payment of a note ·for eight hundred dollars, due in three years, to J. J. Russell, which· incumbrance the deed to Luke Howlett bound the latter to pay, as later he did. Price Howlett had conveyed the land to A'ddie in consideration of love and effection, September 18, 1895, or eight years before the conveyance to Luke. He was in embarrassed circumstances when the latter conveyance was made by himself and wife; creditors were pressing him and judgments had been rendered against him. Neither of the grantors owed Luke anything at the date of the deed, but he was surety for Price on four notes to three banks, the notes ranging in amount from two hundred to sixty dollars, Luke testified. These notes and other debts of Price, to the amount of $3500, were paid by Luke, and as a balance of $440 of the purchase price of $4000 remained, this was paid to Addie and Price Howlett, the grantors. Mrs. Addie Howlett died March 30, 1906, and afterwards, on December 30, 1907, Luke Howlett and his wife Mable and S. Price Howlett sold and conveyed the land in question to defendant, Charles L. Lee, for five thousand dollars, of which sum Luke Howlett received four thousand dollars and Price one thousand. By the advice of his attorney, Lee exacted from the grantors a bond dated January 10, 1908, with sureties, in the sum of two thousand dollars, wherein the aforesaid deed by Addie and Price Howlett to Luke Howlett was referred to, with the statement that in the deed "there was given said Addie Howlett and S. P. Howlett the right to redeem said land within ten years from the date of said deed."* The condition of the bond was this:

"Now if the heirs of said Addie Howlett, deceased, or any one of them, shall have the right to redeem said land, as it is claimed they have, and do redeem said land, then if in that event said Luke Howlett and S. P. Howlett shall pay the said Charles Lee all the sums paid

by him for said land and the reasonable value of all permanent improvements put on said lands by him and hold him safe and harmless from any and all loss on purchase price and permanent improvements by reason of said property being redeemed and taken from him, than this obligation to be void, otherwise to remain in full force and effect.

"It being fully understood and agreed that if the said land be redeemed the sum paid by the parties redeeming it shall be applied to paying said Lee and protecting him from loss on account of said purchase and redemption."

Price Howlett died December 24, 1911. The petition states facts to show the deed in question was executed as a mortgage to secure Luke Howlett in the payment of debts Price owed him, as surety for Price, and in the reimbursement of judgments and other debts of Price he (Luke) agreed to pay out of the consideration of four thousand dollars mentioned in the deed; avers defendant purchased with actual notice of the right and intention of plaintiffs to redeem the land; that they had offered to pay defendant four thousand dollars, with interest at six per cent from July 6, 1913, when, it is averred, interest began to run on the instrument, concluding with a prayer to be allowed to redeem and for an accounting to ascertain the amount due to defendant, taking into consideration the rents and profits he had received while the land had been in his possession. The answer of defendant admitted the truth of some of the statements of the petition and denied others, to-wit: that Addie and Price Howlett owed any debts to Luke when they conveyed to him; that he was surety for Price; that there were judgment liens on the land at the date of said conveyance; that defendant had knowledge or information sufficient to form a belief concerning any agreement which might have been made between Addie and Price and Luke concerning the land, other than the agreement contained in the deed; averred Addie died without exercising the right given her by the deed to redeem, referred

to the conveyance to defendant, after Addie's death, by Luke Howlett and wife and Price for five thousand dollars, and said one thousand dollars of the sum "was paid to the said S. Price Howlett as and for the equity of redemption which Addie Howlett and S. Price Howlett, or either of them, had reserved in the conveyance to said Luke Howlett."

The answer sets up that Luke Howlett took possession of the land as soon as it was conveyed to him, paid all the taxes on it and exercised rights of ownership over it until he conveyed it to defendant, and that since then the defendant "has been in the open, notorious, continuous, hostile and adverse possession," claiming to be owner, and since July 6, 1913, has continued in the like possession. Other matters are stated, but they are 'propositions of law rather than facts, as are some of the things averred in the reply of plaintiffs, among them a denial that defendant's possession was adverse to plaintiffs and an averment that it was simply the possession of a mortgagee before foreclosure.

The allegations are made in the replication that this action was begun within less than twenty-four years after the cause of action (i. e. the right to redeem) descended to plaintiffs; that when it descended both plaintiffs were under twenty years of age and the action was filed before Norman Howlett was twenty-one, and within three years after the disability of Geraldine Howlett Carson was removed. She was twenty-three years old February 10, 1916, and Norman was twenty December 12, 1916, or three months after the petition was filed on September 8, 1916. The attorney who drew the deed asserted to be a mortgage, was Hon. J. J. Russell, and several items of his testimony touch upon the intention of the parties:

"I remember in an indefinite way that they said Price might want to get the place back and Luke had agreed that if he wanted to redeem the place he could do so at any time within ten years, and the deed was written to express their intentions the best I knew how to express them at the time. To my best recollection the

whole agreement was to the effect as expressed in the deed. . . .

"Luke and Price Howlett told me how to write the deed, if there was any outside agreement other than stated in the deed, I do not now recall it, but there may have been agreements between them of which I knew nothing, but, as stated in the deed, I am sure both gave that to me as their agreement. . . .

"There was nothing said to me at that time by either Luke or Price that the deed was anything other than what it purported to be. My recollection of it is that it was a bona-fide conveyance. It seems that from all that was said that it was a bona-fide sale, but that Price hoped to be able to redeem it, and Luke agreed to give him ten years in which to do it. . . .

"I got the impression that Price owed debts and was going to sell the land to Luke, but that he hoped to redeem the land, and Luke consented that he should have ten years in which to do so, and Luke was assuming some of his debts. I don't think that Mrs. Addie Howlett took any part in the conversation, but she was there."

Defendant said regarding the bond:

"I took the bond upon the suggestion and advice of Mr. Deal, my attorney, and that is the reason I had him do it. That was before the expiration of the ten-year period mentioned in the deed from Price Howlett and wife to Luke Howlett.

"You knew, then, what the bond was about and what it was for? A. Yes; they read it to me.

"And you had been told what was in the deed—the right to redeem that land was reserved by Mrs. Addie Howlett and Price Howlett? A. Inside of ten years."

Luke Howlett testified, among other matters:

"When I started to sell the place to Mr. Lee, I told him I couldn't sell the place as I had a redeeming clause there."

The land was worth from fifty to fifty-five dollars an acre in 1903.

Judgment was given for defendant and this appeal was taken by plaintiffs.

Plaintiffs' petition is framed for relief on the premise that the deed of their parents, Addie and Price Howlett, to Luke Howlett, was made and accepted as security for a debt; therefore was a mortgage, which left in Addie Howlett, as the real mortgagor, an equity of redemption which descended to plaintiffs as her heirs and could not be clogged or abridged by stipulation as to the time in which redemption might occur. [Reilly v. Cullen, 50 Mo. 322; Wilson v. Drumrite, 21 Mo. 325, 328.] The fact principally relied on to prove the transaction between the parties was a loan by the grantee and the instrument intended as security for the loan, instead of what it purports to be, a sale with the right of repurchase, is the word "redeem," in the clause of the deed we have quoted. The premises usually found in warranty deeds, and found in this one, are; that the grantors, in consideration of a stated price ($4,000 paid and received) granted, bargained, sold and conveyed and confirmed unto the grantee, the land, describing it. So, too, there are the usual *habendum* clause and a covenant of warranty. The word "redeem" was appropriate to express the equitable right left in Addie Howlett, if the instrument was a mortgage made to secure a debt to the grantee, as the word "purchaser" was the proper designation of the grantee if the conveyance was pursuant to a sale. Neither word fixes, necessarily, the nature of the instrument, and both have more than one meaning in law. A "purchaser," for example, might be one who took by gift or a will, whereas "redeem" is used in a wider sense than retrieving the title to mortgaged land and as signifying "to purchase back." In two cases decided by this court wherein the question was, as it is now, whether a conveyance was a mortgage or a sale with a right to repurchase retained by the vendor, the documents depended on, among other matters, to show the transaction was a mortgage, contained the word "redeem," but that fact was not alluded to as evidence

the transaction was a mortgage. [Bobb v. Wolff, 148 Mo. 335, 341, 343; Bailey v. St. Louis Union Tr. Co., 188 Mo. 483, 488, 489.] In the first of those cases the grantee in the warranty deed wrote two letters to the grantor, in one of which he said: "Do you desire to redeem or purchase the property on Olive Street? Although the time is out, I have no objection to do as you wish now upon the terms originally agreed upon." In the other letter, in answer to the inquiry of the grantor as to what he would give "for my equity of redemption," the grantee said: "Don't want to buy; I have calculated on your redeeming in September." In the second case, in an agreement extending the original arrangement between the parties, the Trust Company said the grantor or his assignee "should have the right to redeem the property described in the within contract, subject to its terms, at any time prior to November 24, 1898," etc. In both cases the contract between the parties was held to have been a sale with the right of repurchase, but, as stated, the effect of the word "redeem" was not discussed.

We are cited at this point to two other decisions of this court: Desloge v. Ranger, 7 Mo. 327, and Sheppard v. Wagner, 240 Mo. 409. In both opinions the effect of a clause for redemption in a case like the present was considered, and in each the ruling was against the view that the provision was conclusive. In the first case this was expressly stated and also that the circumstances attending the transaction must be considered to ascertain the real intention of the parties. The circumstances noticed were the price in comparison with the value of the property (a negro slave), the retention of possession of the negro by the assignor, and that the slave was assigned to a mercantile firm which did not deal in slaves, and to which the assignor was indebted. In the second case the opinion, in order to determine whether the transaction was a sale or mortgage, considered whether the relation of debtor and creditor existed previous to or was created at the time of the conveyance,

Carson v. Lee.

and found a debt was created; next, the grantees became tenants of the grantors after the conveyance, a relation inconsistent with a sale; and, third, the grantors were to pay the liens and special taxes on the property, as the grantees naturally would do if they were purchasers. Those facts, along with the provision for redemption of the property by the grantors within three years, were held to establish a mortgage.

That technical terms which, according to their established meaning indicate either a sale or a mortgage, are not always decisive of the question, appears forcibly from a decision where the deed asserted to be a mortgage, spoke of the "indebtedness as aforesaid," of the maker to the grantee, and yet, because of other facts which showed there was no debt, the conveyance was held a sale. [Donovan v. Boeck, 217 Mo. 70, 90.]

In another jurisdiction, a conveyance in the form of a warranty deed of certain property, contained a clause which recited that it was given in satisfaction of a note and mortgage and that the grantors should have the right "to redeem or repurchase" the premises within one year, by paying the amount of the note with interest until said redemption, at the rate of fifteen per cent per annum, and all costs and taxes paid by the grantee; the grantors to have possession for said year. [Swarm v. Boggs, 12 Wash. 246, 248.] In an action to have the conveyance treated as a mortgage, after saying the instrument must be construed as an absolute deed unless the intention of the parties to treat it as a security appeared from the cited clause, the court said there was nothing in the language of the instrument to constitute it a mortgage, except that, in connection with the right to repurchase, the word "redeem" was used, and in another place, the words "redemption of the property." The decision was that in as much as the evident intention of the parties was that the conveyance should operate to pay the debt existing when it was made, those words were not sufficient to continue the debt in force and render the instrument a security.

The effect to be given to deeds like the one in hand, is determined by the intention of the parties, and of both parties, be it noted (Holmes v. Fresh, 9 Mo. 201, 208), at the time of the transaction, and if the deed was made to be a mortgage or a conditional sale, in either event, it retains the character then intended and the rights of the parties are determined accordingly. [Phillips v. Jackson, 240 Mo. 310, 332; Brant v. Robertson, 16 Mo. l. c. 145; Powell v. Crow, 204 Mo. 481, 487; 1 Jones, Mortgages, (7 Ed.), sec. 263; Knowles v. Williams, 58 Kan. 221; Elliott v. Conner, 63 Fla. 408; Conway's Exrs. v. Alexander, 7 Cranch (U. S.) 218; Tucker v. Witherbee, 130 Ky. 269; Cornell v. Hall, 22 Mich. 377.]

Probably because of the tendency of courts of equity to favor the theory of a mortgage (Slowey v. McMurray, 27 Mo. 113, 115), their jurisdiction is invoked frequently for relief against conveyances absolute in form, and a body of rules by which to determine the nature of the instrument has grown up. What the agreement was having been established, it is to be enforced like any other contract, whether it was a conditional sale or a mortgage; for a grantee is as such entitled to have his rights protected in the former case, as a grantor would have if it were a mortgage. [1 Jones, Mortgages (7 Ed.), p. 537, sec. 262.] The terms of the deed may show so clearly on its face the real understanding of the parties, that no aid from extraneous circumstances is required to interpret it; or it may leave the question in doubt, when resort will be had to other evidence. [Desloge v. Ranger, 7 Mo. l. c. 329, 330; 1 Jones, Mortgages, sec. 261 and cases cited in notes.]

In the present instance the intention of the parties cannot be ascertained certainly from the deed, hence we must look to facts beyond it. A condition indispensable to hold a deed to be a mortgage is that there must have been a debt to secure, or some liability against which the grantee is to be guarded. On this proposition all the cases agree, and in all of them will be found statements which show the decision in favor of the mortgage theory

was based on evidence to show the instrument was given as security of some kind; for the purpose of a mortgage is security. [Brant v. Robertson, 16 Mo. 1. c. 143; Donovan v. Boeck, 217 Mo. 70, 87; Flagg v. Mann, 2 Sumner, 533.] Neither Addie nor Price Howlett was indebted to Luke at the date of the conveyance in question, but Luke was surety for Price on notes to the amount of four or five hundred dollars. These notes were paid out of the price named in the deed, as were the prior deed of trust on the land, in favor of J. J. Russell, and several other debts of Price Howlett. Thus it appears the liability of Luke Howlett as Price's surety, was extinguished and the liabilities for which Luke was not surety were dicharged; therefore there was no indebtedness of Addie or Price Howlett to Luke, or liability of Luke for them left in force, unless the four thousand dollars was advanced as a loan to one or the other of the grantors, and that this was so there is no evidence. To hold there was a debt still subsisting or created between the parties, would be to "run counter to all ordinary experience in business transactions," as was said in a similar case (Bobb v. Wolff, 148 Mo. 1. c. 345), for if there was a debt, then if business usage was followed, the obligation taken up by Luke Howlett would have been transferred to him or a new note given by Price Howlett for $4,000.

We refer to these other circumstances as pointing to the conclusion that the transaction was a sale with the right accorded to the vendors to repurchase, all of which circumstances the courts have held tend to establish that fact. None of the obligations of Price Howlett, which were paid out of the consideration, were assigned to Luke. [Brant v. Robertson, 16 Mo. 1. c. 139, an early but thoroughly considered opinion; Slowey v. McMurray, 27 Mo. 1. c. 116; Turner v. Kerr, 44 Mo. 429, 431.]

No note or other evidence of a loan by him to Price or Mrs. Howlett was taken, and no debt was mentioned in the deed, nor did it contain a stipulation binding either of the grantors to pay the grantee $4,000, or any other sum; a circumstance of weight, though not conclusive.

[Conway's Exrs. v. Alexander, 7 Cranch, (U. S.) 218; Justice STORY in Flagg v. Mann, supra, as quoted in Brant v. Robertson, 16 Mo. l. c. 144.]

Luke Howlett was put in possession of the premises at once. [Desloge v. Ranger, 7 Mo. l. c. 331; Cobb v. Day, 106 Mo. l. c. 297.]

Luke, the grantee, agreed to pay the taxes on it which would fall due after the year 1903. [Bobb v. Wolff, 148 Mo. l. c. 344, 345.]

The consideration was more than enough to pay the debts of the grantors, and the surplus left after paying those debts was turned over to the grantors. [Fort v. Colby, 144 N. W. 393; Powell v. Crow, 204 Mo. l. c. 488.]

We think those facts considered along with the terms of the instrument itself, plainly show that the transaction between the parties was intended by both sides as a sale with the right in the vendors to purchase back, if they were able, within ten years; an arrangement entered into by Luke Howlett to help his brother out of his financial embarrassments; and that they were kin is to be remembered. [Powell v. Crow, 204 Mo. l. c. 487.]

We may add that the oral testimony points to the same conclusion as the other facts we have noticed.

Let us look at the case from another point of view: if the conveyance was in fact a mortgage, Luke Howlett had the right, after ten years, to insist on the payment of his loan, and in default of payment to foreclose the mortgage, have the property sold and if he did not realize thereby enough to discharge the debt, to maintain an action against Addie and Price Howlett for the balance. [Slowey v. McMurray, 27 Mo. 113, 116; 1 Jones, Mortgages (7 Ed.), sec. 264; Henley v. Hotaling, 41 Cal. 22; McNamara v. Culver, 22 Kan. 661.] Can it be thought such was the intention of the parties? Or, is not the conclusion irresistible that an option was given to the grantors to buy back? We accept the latter as the proved nature of the transaction, without invoking the rule that the evidence, to show a deed absolute in form is a mort-

gage, must be cogent and convincing. [Gerhardt v. Tucker, 187 Mo. 46.]

Plaintiffs emphasize the fact that defendant, when he purchased the land from Luke Howlett, required a bond to indemnify him against a possible claim by the plaintiffs, and that Price Howlett was paid one thousand dollars or the difference between the price defendant was to give and the sum for which Addie and Price Howlett might repurchase from Luke. As stated before, the character of the deed was fixed by the intention of the parties when it was made; and that Lee, by way of precaution, exacted security against a possible right in plaintiffs to redeem, sheds no light on the original transaction and has no tendency to prove it was a loan secured by a mortgage; but simply shows defendant was apprehensive and wished to guard against contingencies. The one thousand dollars paid to Price Howlett was for his right to repurchase, the ten-year period for which the right was reserved not having expired when defendant purchased in 1907. By the terms of the deed to Luke Howlett, the right was accorded to Addie and Price Howlett, and the former being at the time of full legal capacity, was competent to make that arrangement. [R. S. 1909, secs. 4335, 8304; Rice, Stix & Company v. Sally, 176 Mo. 107.]

We have held the transaction in question was a conditional sale to Luke, and as the only issue raised by the pleadings and briefed and argued was as to whether it was a sale or a mortgage, it is unnecessary to ascertain the respective rights, under the clause which provides for a repurchase, of Price Howlett and plaintiffs, as the heirs of Mrs. Howlett, or whether plaintiffs acquired any rights thereunder at the death of their mother; but we refer to some authorities which hold an option to purchase property creates no interest that is either assignable or transmissible to the heirs of the holder of the option. [Sutherland v. Parkins, 75 Ill. 338; Newton v. Newton, 11 R. I. 390; Rease v. Kittle, 56 W. Va. 269.]

The judgment is affirmed. All concur.